IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 17, 2017

**CLYDE GREEN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sullivan County**
**No. C64541  R. Jerry Beck, Judge**

_____

**No. E2016-01847-CCA-R3-PC**

_____

The Petitioner, Clyde Green, appeals the denial of his petition for post-conviction relief. The Petitioner pled guilty to two counts of facilitation of first degree premeditated murder, two counts of facilitation of felony murder, especially aggravated robbery, criminal conspiracy to commit aggravated robbery, criminal conspiracy to possess more than twenty-six grams of cocaine with the intent to sell or deliver, possession of more than twenty-six grams of cocaine with the intent to sell or deliver, and maintaining a dwelling where controlled substances were used or sold. He received an effective twenty-two-year sentence. The Petitioner sought post-conviction relief, asserting that he received the ineffective assistance of counsel, which rendered his pleas unknowing and involuntary. Following a hearing, the post-conviction court denied relief. After review of the record and applicable law, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jessica C. McAfee, Greeneville, Tennessee, for the appellant, Clyde Green.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Dan E. Armstrong, District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

Pursuant to a guilty plea, the Petitioner was convicted and sentenced as follows: (1) twenty-two years for facilitation of first degree premeditated murder of Mr. Jeffrey Nolan; (2) twenty-two years for facilitation of first degree premeditated murder of Mr. Terrance Alexander; (3) twenty-two years for facilitation of felony murder of Mr. Nolan; (4) twenty-two years for facilitation of felony murder of Mr. Alexander; (5) twenty-two years for especially aggravated robbery; (6) six years for criminal conspiracy to commit aggravated robbery; (7) twelve years for criminal conspiracy to possess more than twenty-six grams of cocaine with the intent to sell or deliver; (8) twelve years for possession of more than twenty-six grams of cocaine with the intent to sell or deliver; and (9) four years for maintaining a dwelling where controlled substances were used or sold. The trial court merged the facilitation of first degree premeditated murder conviction of Mr. Nolan into the facilitation of felony murder of Mr. Nolan conviction. Likewise, the trial court merged the facilitation of first degree premeditated murder conviction of Mr. Alexander into the facilitation of felony murder of Mr. Alexander conviction. The Petitioner was sentenced as a Range I offender, and all sentences were ordered to be served concurrently and at thirty percent, except the especially aggravated robbery sentence, which was ordered to be served at one hundred percent. As a condition of his plea, the Petitioner was required to testify truthfully at the trial of his co-defendants.

**Guilty Plea Hearing**

The following facts were provided by the State in the form of "an addendum of stipulated facts." About two months before the murders occurred, the Petitioner moved from New York to Tennessee. Upon arriving in Johnson City, he lived with Mr. O'Sheene Massey and Mr. Jawan Massey, who were selling cocaine. Mr. Nolan and Mr. Alexander were the "sources" of the cocaine that the Masseys were selling. The Petitioner then began selling cocaine with his co-defendants. The Masseys and the Petitioner were eventually evicted from their house in Johnson City where they were selling cocaine. They moved to Piney Flats, and they did not sell cocaine from their home in Piney Flats. The Petitioner was present during discussions among the Masseys, Mr. Leslie Ware, and Mr. Brian Beco that involved their cocaine business and robbing their suppliers. They decided to rob Mr. Alexander and Mr. Nolan at the same time. Mr. O'Sheene Massey expressed a desire to "take over" the Johnson City cocaine industry and to "remove[] his competitors."

Several days before the instant robbery and murders, the Masseys and Mr. Ware decided to rob Mr. Nolan. While riding in the vehicle with them, the Petitioner overheard their decision to rob Mr. Nolan. They arrived at Mr. Nolan's place of business, the Candle Shop, and Mr. O'Sheene Massey entered the store. Ultimately, Mr. O'Sheene Massey decided not to rob Mr. Nolan but did buy about one ounce of cocaine from Mr.

Nolan. The Petitioner told police that after this event and before the murders, he heard Mr. O'Sheene Massey and Mr. Ware talk about murdering "drug suppliers."

On the day of the robbery and murders, the Petitioner drove the Masseys and Mr. Ware to the Candle Shop. The Petitioner told police that when they arrived at the shop, he did not know that there were plans to rob Mr. Nolan and that he did not have a gun. Mr. Nolan was not at the shop, and they left. Mr. Nolan then called Mr. O'Sheene Massey, and the co-defendants returned to the Candle Shop. The Petitioner again witnessed his co-defendants discussing plans to rob Mr. Nolan. The Petitioner remained in the vehicle while several of his co-defendants entered the shop. After some time passed, the Petitioner "went in the store and no one was in the front room of the shop. He then saw Mr. Jawan Massey[,] who had a gun in his hand as well as a gun in his waistband[,] holding the door to the back room." He also saw Mr. Ware pointing a gun to the back of Mr. Nolan's head. The Petitioner "turned to go" and "heard one shot as he walked out and two more shots once he was outside." After the shots were fired, they all fled the scene.

They returned to the Piney Flats residence. Mr. Jawan Massey revealed that he had stolen $4,100 and four ounces of cocaine. Mr. Ware claimed to have shot both Mr. Nolan and Mr. Alexander during the course of the robbery. Mr. O'Sheene Massey ordered the Petitioner to begin packaging the stolen cocaine, and the Petitioner complied with the demand.

During the plea colloquy, the Petitioner testified that he understood that he was not required to plead guilty and that, as a condition of his plea, he was required to testify truthfully at a trial involving his co-defendants. He also testified that he understood that he would be sentenced in light of whether the State believed he testified truthfully at the trial. The Petitioner stated that he understood the trial court's explanations of the crimes, elements, and his sentences. The Petitioner acknowledged that he understood that he would be sentenced as a Range I, standard offender. The trial court explained the elements of the crime of maintaining a dwelling where controlled substances are sold or used, and the Petitioner acknowledged he understood them. He also testified that he understood that his effective sentence would be twenty-two years in confinement served at one hundred percent, which is the release eligibility for an especially aggravated robbery conviction. He stated that he understood he was entitled to a hearing regarding whether he testified truthfully at the trial. He also stated that he understood that, by pleading guilty, he was giving up his right to a jury trial, his right to confront witnesses, his right to call witnesses, and his right against self-incrimination.

The Petitioner informed the trial court that at the time of the plea colloquy, he was thirty years old, dropped out of high school, considered himself to be of average

intelligence, had been diagnosed with a learning disability in reading and comprehending, was able to read all materials relevant to the plea, understood the trial court's explanations, did not need further explanation of the plea by the trial court, had previously pled guilty to another criminal offense, was familiar with a courtroom setting, believed the plea was in his best interest, and understood the plea could have an effect on future sentencing. At the conclusion of its colloquy, the trial court accepted the Petitioner's plea, finding that the Petitioner had entered his plea knowingly and voluntarily.

## Post-Conviction Hearing

The Petitioner filed a post-conviction relief petition, arguing that he was denied the right to the effective assistance of counsel. In an amended petition for post-conviction relief, the Petitioner alleged, among several other arguments, that trial counsel failed to adequately explain the lesser included offenses that the Petitioner could have been found guilty of at trial, that trial counsel failed to adequately explain the concept of criminal responsibility, that trial counsel failed to fully inform the Petitioner about the sentences that the trial court could impose at trial, and that the Petitioner did not have the intellectual capacity to plead guilty because he only had a ninth grade education and had trouble reading.

At the post-conviction hearing, the Petitioner testified that trial counsel visited him at the jail prior to the guilty plea hearing. He also testified that trial counsel provided with him a copy of the statements that his co-defendants made against him and that trial counsel explained each of the charges against him. He could not recall whether trial counsel explained the sentences he faced if found guilty at trial. He stated that he did not know there was a possibility of being sentenced consecutively if he proceeded to trial. He testified that trial counsel did not explain to him that a jury could find him guilty of a lesser included offense if they did not find him guilty of felony murder and premeditated murder for each victim. The Petitioner could not remember discussing with trial counsel the crime of facilitation of first-degree murder. He testified that besides his co-defendants' statements, trial counsel did not show any evidence that the State would use against him at trial. He also testified that trial counsel did not explain to him how "driving the car and being at the scene of the crime could potentially make [him] be found guilty at a jury trial." He could not recall whether trial counsel explained to him the concept of a "best interest" plea.

The Petitioner stated that he did not want to plead guilty to the especially aggravated robbery charge and argued with trial counsel over whether he should, explaining that he did not assist in the execution of the robbery. He also stated that trial counsel did not explain to him the concept of criminal responsibility for the conduct of

another. He testified that trial counsel only gave him a written explanation of especially aggravated robbery, robbery, aggravated robbery, and criminal responsibility of another without discussing the offenses and concepts with him or how they applied to him. He also testified that he was fully willing to plead guilty to the facilitation to commit first degree murder charges. He stated that he asked trial counsel to provide him with cases involving especially aggravated robbery but that trial counsel did not do so. He also stated that he asked the trial court to remove trial counsel from his case but that the trial court refused. The Petitioner testified that he pled to especially aggravated robbery because he did not want to proceed to trial with trial counsel. He also testified that trial counsel discussed with him the inconsistent statements he gave to detectives. He stated that he did not discuss with trial counsel potential defenses to present or witnesses to call for the especially aggravated robbery charge.

The Petitioner asserted that he should not have pled guilty to the drug charges because he did not have drugs in his possession. He testified that he did not discuss the drug charges or the concept of criminal conspiracy with trial counsel. He also testified that trial counsel did not review enhancing and mitigating factors for sentencing with him.

On cross-examination, the Petitioner admitted that he did, indeed, possess the cocaine involved in the robbery. He testified that he did not understand the crime of especially aggravated robbery. He also testified that he was not telling the truth when he told the trial court that he was satisfied with trial counsel's representation at the plea colloquy. He acknowledged that he was provided a copy of the presentment. Despite testifying to the contrary at the plea colloquy, he stated that he did not understand the concepts of criminal responsibility or conspiracy.

On re-direct examination, the Petitioner testified that he had a ninth grade education, took special education courses while in school, and had a learning disability that affected his ability to read and understand. He also testified that trial counsel reviewed the waiver of rights form with him and read it out loud to him.

Trial counsel testified that the State was not willing to offer a lower sentence for the especially aggravated robbery charge and that the Petitioner's previous counsel had been presented with the same plea offer. Trial counsel also testified that although the State had filed a notice to seek life without parole for the murder charges, he did not feel that the prospect of life without parole was important because he viewed a twenty-two-year sentence at the Petitioner's age to be "essentially a life sentence anyway." He stated that based on the Petitioner's statements to the police, he believed "a jury was very likely to convict him of felony murder." He also stated that he did not believe there were any

- 5 -

grounds for suppression of the statement. He testified that he "absolutely" believed it was in the Petitioner's best interest to accept the plea offer from the State.

Trial counsel described the Petitioner as "very sharp" and found the questions that he asked to be intelligent. Trial counsel stated that the Petitioner requested from him "every case in the history of the state of Tennessee dealing with a robbery," which he refused to do and instead provided him with a few cases that were similar to the Petitioner's case and addressed the issue of criminal responsibility. He also stated that he informed the Petitioner of the law on criminal responsibility, including how in Tennessee a defendant "can be a party to the crime without actually physically being the one who does the act." He noted that the Petitioner's understanding of the law was not the law in Tennessee but rather the law of New York. Trial counsel testified that he had eight court appearances with the Petitioner, met with the Petitioner fifteen times, sent nineteen letters to the Petitioner, spoke with the Petitioner twenty times, met with the district attorney on four occasions, and spoke with the district attorney's office via telephone over thirty times.

On cross-examination, trial counsel testified that he believed the Petitioner could have prevailed at trial on the maintaining a dwelling charge but nevertheless did not proceed to trial on that charge because the plea offer was a "package offer."

Following the conclusion of the proof and arguments, the post-conviction court denied the Petitioner post-conviction relief, crediting trial counsel's testimony over the Petitioner's testimony. The post-conviction court found that trial counsel and the Petitioner discussed the elements of the relevant offenses and the potential for the Petitioner to be sentenced to life imprisonment. The post-conviction court also found that trial counsel provided the Petitioner with case law that was relevant to the Petitioner's request. The post-conviction court noted that although the Petitioner testified that trial counsel did not discuss the matter of consecutive sentencing with him, trial counsel told the Petitioner that he faced a minimum sentence of fifty-two years[1] for a felony murder conviction. The post-conviction court found that "[a]lthough [the Petitioner] may have only a ninth grade education and may be special needs, he seemed to be … asking the correct questions that a person with a good intelligence would ask of his attorney." The post-conviction court also found that the Petitioner was "sharp" and "alert to the concept of criminal responsibility."

---

[1] Based on our review of the record, we do not know how the fifty-two-year figure was calculated. We note, however, that a life sentence is sixty years, which may be reduced by a maximum of fifteen percent. *See* T.C.A. § 40-35-501. If a sentence were to have the maximum sentence reduction credits applied, a life sentence can be reduced to fifty-one years.

Following the post-conviction hearing, the post-conviction court issued an order denying the Petitioner post-conviction relief. In its order, the post-conviction court found that "the [P]etitioner was well versed in the workings of the criminal justice system and understood the legal theory of criminal responsibility and the legal implications of his guilty plea."

## ANALYSIS

On appeal, the Petitioner argues that trial counsel provided ineffective assistance of counsel, rendering his guilty pleas unknowing and involuntary, by failing to (1) explain the concept of criminal responsibility for his especially aggravated robbery and facilitation to commit first degree murder convictions, (2) advise the Petitioner to proceed to trial on the drug offenses, (3) allow the Petitioner to proceed to trial, and (4) adequately inform the Petitioner about consecutive sentencing. He also argues that the trial court erred when it determined that, despite his ninth grade education and learning disability, he was able to enter his guilty pleas knowingly and voluntarily. The State contends that trial counsel was effective and the Petitioner's pleas were entered knowingly and voluntarily.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

## I. Ineffective Assistance of Counsel

A criminal petitioner has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and

prejudice to the defense. *Strickland*, 466 U.S. at 687. Failure to satisfy either prong results in the denial of relief. *Id.* at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

"'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). "[W]hen a petitioner has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691. "Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed." *Baxter*, 523 S.W.2d at 933.

Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. The Court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable." *Id.* at 687. "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. However, the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

First, the Petitioner argues that trial counsel was deficient for failing to adequately explain the concept of criminal responsibility for the conduct of another and how it may have pertained to both the facilitation to commit first degree murder convictions and the especially aggravated robbery conviction. The Petitioner contends that his confusion of the law led him to unknowingly and involuntarily accept the guilty plea agreement, noting that he does not believe that the State's evidence would have been sufficient to convict him at trial of especially aggravated robbery. The post-conviction court credited trial counsel's testimony and found that trial counsel explained the elements of the crimes within the plea agreement and provided the Petitioner with case law about especially aggravated robbery. The post-conviction court also found that the Petitioner "understood the legal theory of criminal responsibility." Moreover, the Petitioner acknowledged during the guilty plea hearing that he understood the elements of the crimes for which he was pleading. Accordingly, we hold that the Petitioner failed to establish that trial counsel was deficient.

Second, the Petitioner argues that trial counsel was deficient for failing to advise him to proceed to trial on the drug offenses and discuss the State's evidence related to the drug offenses. Specifically, he contends that because trial counsel believed that the Petitioner could prevail on the maintaining a dwelling charge, he should have gone to trial. At the post-conviction hearing, trial counsel testified, however, that the State's plea offer was a "package offer." In other words, the Petitioner could not pick and choose which offenses he pled guilty to and which offenses he took to trial, including the maintaining a dwelling charge. Trial counsel also testified that he explained the elements of the charges against the Petitioner and the significant weight of the State's evidence against the Petitioner. Accordingly, we hold that the Petitioner has failed to show that trial counsel was deficient for advising the Petitioner to accept the plea deal or for not adequately discussing the State's evidence for the drug offenses with the Petitioner.

Third, the Petitioner argues that trial counsel did not "allow" him to decide whether to proceed to trial. The Petitioner's only proof to support his argument was his

testimony at the post-conviction hearing that he did not want to plead guilty. He provided contradictory testimony at the same hearing when he stated that he was fully willing to plead guilty to the facilitation of first degree murder charges. Moreover, at the guilty plea hearing, the Petitioner testified that he understood he was not required to plead guilty and could proceed to trial. Accordingly, we hold that the Petitioner has not proved by clear and convincing evidence that trial counsel forced him to plead guilty.

Fourth, the Petitioner argues that trial counsel was deficient for failing to adequately inform him about consecutive sentencing. Although trial counsel may not have specifically addressed the issue of consecutive sentencing, the Petitioner was sentenced concurrently as agreed to in the plea agreement. The Petitioner received a concurrent sentence, and his motivation to accept the plea would presumably have increased had he thought his exposure even higher due to possible consecutive sentences. Accordingly, the Petitioner has failed to show that he was prejudiced by trial counsel's representation.

## II.    Voluntariness of Guilty Plea

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citations omitted). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed,

> a court charged with determining whether ... pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citation omitted).

The Petitioner argues he was not able to knowingly and voluntarily plead guilty because of his ninth-grade education and learning disability, contending that "he was unable to make an informed decision" and that he "did not understand the nature of the crimes to which he was pleading guilty." The post-conviction court found that the

Petitioner "seemed to be … asking the correct questions that a person with a good intelligence would ask of his attorney." The post-conviction court also found that the Petitioner was "sharp" and "alert to the concept of criminal responsibility." Moreover, the Petitioner was familiar with criminal proceedings and had previously pled guilty to other offenses. The Petitioner testified at the guilty plea hearing that he thought it was in his best interest to plead guilty. The Petitioner also testified at the guilty plea hearing that he did not have any questions for the trial court. Further, the post-conviction court found that trial counsel advised the Petitioner on the elements of the charges and potential sentences. Nothing in the record preponderates against the post-conviction court findings. Accordingly, we hold that the Petitioner entered his guilty plea knowingly and voluntarily.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE